IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALBERTO CADENA,                                    07-CV-1741-BR

          Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


TIM D. WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR  97045
(503) 632-1120

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1  -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Alberto Cadena seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision.


## ADMINISTRATIVE HISTORY

     Plaintiff filed his application for DIB on May 14, 2003, which was denied initially and on reconsideration.  Tr. 49-50,

2  -  OPINION AND ORDER

73.[1]  Plaintiff filed his application for SSI on May 14, 2003,
which was also denied initially and on reconsideration.  Tr. 53,
58.  Plaintiff alleged a disability onset date of March 6, 2001,
in both applications.

An Administrative Law Judge (ALJ) held a hearing on
August 10, 2005.  Tr. 39.  Plaintiff testified at the hearing.
At the close of the hearing, the ALJ concluded a consultative
neurological examination was necessary to develop the record
fully.  Following the examination, the ALJ held a supplemental
hearing on March 6, 2006.  Tr. 29.  A vocational expert (VE) and
a medical expert (ME) testified at the hearing.

On July 12, 2006, the ALJ issued an opinion in which he
found Plaintiff was not disabled.  That decision became the final
decision of the Commissioner on October 9, 2007, when the Appeals
Council denied Plaintiff's request for review.  Tr. 7.


## BACKGROUND

Plaintiff was 42 years old at the time of the first hearing.
Tr. 357.  He has a high-school education.  Tr. 358.  Plaintiff
has worked as a cook's helper, dishwasher, cashier, and delivery
driver.  Tr. 389-90.  Plaintiff alleges he is disabled by

--------

[1] Citations to the official transcript of record filed by
the Commissioner on May 8, 2008, are referred to as "Tr."

3   -  OPINION AND ORDER

degenerative disc disease that causes him to suffer severe back and leg pain.

Plaintiff injured his back in a car accident in 1992. Tr. 167, 345.  Although he gradually recovered from the accident, he injured his back again in November 1999 when he lifted a load of fish at Fred Meyer while he was working.  Tr. 167, 360. In September 2001, he again injured his back by lifting a vat of oil in a restaurant.  Tr. 359.  He has not worked since then. Tr. 20, 115.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the record, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-25.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of

developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, if the Commissioner determines the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. §§ 404.1520(b), 416.920(b).

In Step Two, if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments," the claimant is not disabled. *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

In Step Three, the claimant is presumed conclusively to be disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listing of Impairments).

If the adjudication proceeds beyond Step Three, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31,

7   -  OPINION AND ORDER

2006.  Tr. 18.  The ALJ also found Plaintiff has not engaged in substantial gainful activity at any time relevant to Plaintiff's claims.

At Step Two, the ALJ found Plaintiff has the severe impairment of chronic back-pain syndrome secondary to degenerative disc disease of the lumbar and cervical spine and the nonsevere impairments of voluntary tremors and depression.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meet or equal a Listing.  Tr. 21.  The ALJ assessed Plaintiff's RFC and found Plaintiff can lift or carry up to 20 pounds occasionally and 10 pounds frequently; can sit, stand, or walk for up to six hours in an eight-hour workday; can perform only limited pushing and pulling in the lower extremities; can occasionally climb, kneel, crouch, and stoop; and is precluded from crawling.  Tr. 21.

At Step Four, based on the testimony of the VE, the ALJ found Plaintiff retains the RFC to perform his past relevant work as a delivery driver.  Tr. 25.

Even though a claimant is not disabled at Step Four if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past, the ALJ, nevertheless, proceeded to Step Five.  *See Yuckert*, 482 U.S. at 141-42.  The ALJ found, based on the testimony of the VE, that Plaintiff could also perform other work in the national economy such as a

merchandise marker.  Tr. 25.  The ALJ, therefore, concluded at Step Five that Plaintiff is not disabled and is not entitled to benefits.

**<u>DISCUSSION</u>**

Plaintiff contends the ALJ erred when he (1) rejected Plaintiff's testimony; (2) rejected the statements of lay witnesses; (3) rejected the opinion of Jeffrey Bert, M.D.; (4) failed to include all of Plaintiff's limitations in the hypothetical to the VE at Step Four; and (5) failed at Step Five to determine whether there was a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) regarding the job of merchandise marker or, apparently in the alternative, failed to explain his resolution of any conflict between the VE testimony and the DOT as required under SSR 00-4p.

**I.   Plaintiff's Testimony.**

Plaintiff contends the ALJ improperly rejected Plaintiff's testimony.

On June 18, 2003, Plaintiff completed a Pain Questionnaire in which he reported almost constant burning and aching pain in his right hip and back.  Tr. 105.  He also stated nothing relieves the pain even though he is taking several prescriptions. Tr. 105.

At the first hearing on August 10, 2005, Plaintiff testified tremors in his right leg prevent him from standing for longer than 20 minutes, sitting for longer than 25 minutes, and standing or walking for longer than a total of two hours in an eight-hour workday. Tr. 366. He stated the tremors have caused him to collapse in the past. Tr. 367. Plaintiff also testified he could lift no more than a gallon of milk. Tr. 368. He stated he is in such pain that he suffers from nausea every day and vomits every morning and his pain interferes with his ability to sleep. Tr. 369-70. He also testified he tries to do household chores, but they exacerbate his pain. Tr. 372.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and

convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ determined Plaintiff's degenerative disk disease of the lumbar and cervical spine is a severe impairment that causes Plaintiff chronic back pain. Tr. 20.  In addition, all of the doctors who treated or examined Plaintiff, including Dr. Bert; Michael Pylman, M.D.; Miroslav Bobeck, M.D.; and Raymond Nolan, M.D., link Plaintiff's symptoms to his impairments.  Tr. 168-69, 198-99, 238-39, 306-07.  Accordingly, the Court finds Plaintiff has satisfied the first two prongs of the *Cotton* test by providing evidence of impairments that could reasonably cause him some degree of pain.  799 F.2d at 1407.  Because the ALJ did not determine Plaintiff is malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. *See Lester*, 81 F.3d at 834.

The ALJ found, and the record reflects, Plaintiff's reported symptoms are inconsistent with his impairments in regard to their intensity, duration, and limiting effects; his symptoms are improved with treatment; and his reports of leg tremors are not entirely credible. Tr. 22-23. For example, on May 19, 2003,

Dr. Bert, an orthopedic physician, conducted a physical spine examination and noted Plaintiff had difficulty walking, but he also noted Plaintiff has full strength in his lower extremities and a normal sensory examination.  Tr. 168.  Dr. Bert recommended physical therapy for Plaintiff's low back pain.  Tr. 169.  On May 21, 2003, Plaintiff's physical therapist, Beverly Sutter, noted Plaintiff was making good progress.  Tr. 196.  On June 30, 2003, Dr. Bert noted Plaintiff was more comfortable on medication.  Tr. 166.

In addition, on July 30, 2003, Mary Ann Westfall, M.D., completed an RFC assessment at the request of DDS.[2]  She opined Plaintiff's impairments could produce some degree of symptom, but that the severity or duration of those symptoms was dispropor-tionate to the medical evidence.  She noted even though Plaintiff reported pain of eight on a scale of ten during Dr. Bert's examination, Plaintiff was able to continue with the examination. Tr. 222-23.  On May 21, 2004, Dr. Bobeck did not find any radiculopathy or nerve root compression.  Tr. 239.  He opined Plaintiff would not benefit from fusion surgery and recommended traditional nonoperative therapies for low back pain, including weight loss, physical therapy, and exercise.  Tr. 239.

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

On September 7, 2005, Dr. Nolan performed an examination of Plaintiff.  Dr. Nolan concluded Plaintiff's right leg tremors were voluntary and inconsistent with Plaintiff's back pain because they ceased when Dr. Nolan distracted Plaintiff. Tr. 307.  Dr. Nolan stated his diagnoses of Plaintiff's back pain was "compromised by facititial components of presentation," including a positive axial load test and "fake right leg twitching."  Dr. Nolan also found Plaintiff's assessment of his back pain at eleven on a scale of ten undermined Plaintiff's credibility.  Tr. 307.  At the supplemental hearing on March 6, 2006, Dr. Nolan explained his opinion of Plaintiff's credibility was based in part on positive Waddell's tests, which are used to identify individuals who are exaggerating symptoms of back pain. Tr. 383.  He explained the axial lode test is done by exerting pressure on the individual's head, which does not create pressure on the low back.  Accordingly, if an individual complains of low back pain when that test is performed, it is a "red flag" for exaggeration.  Tr. 384.  He also stated if symptoms disappear when the individual is distracted, it is a positive Waddell's test.  Tr. 384.  Dr. Nolan pointed out that if the patient complains even though the examining physician's actions should not cause symptoms, it is highly likely that the patient is exaggerating.  Tr. 384.

On this record, the Court concludes the ALJ did not err when

he rejected Plaintiff's symptom testimony as not credible because
the ALJ provided legally sufficient reasons supported by the
record for doing so.

**II.  Lay-Witness Statements.**

Plaintiff also contends the ALJ erred when he rejected the
lay- witness statements of Plaintiff's girlfriend, Wendy Sue
Deriso, and her mother, Dorothy Stevens.

On June 15, 2003, Deriso, who lives with Plaintiff,
completed a Third-Party Adult Function Report in which she stated
Plaintiff suffers constant pain that has worsened significantly
over the past one or two years.  Tr. 103.  Deriso also stated
Plaintiff's impairments affect his ability to lift, sit, kneel,
squat, climb stairs, bend, stand, reach, walk, and complete
tasks even though he is able to do some light household chores.
Tr. 101.  On March 13, 2006, Deriso submitted a written statement
to the ALJ in which she reported she has been Plaintiff's sole
supporter for the past five years because he has been unable to
work.  Tr. 139.  Deriso also stated Plaintiff was able to do
light work around the house three years earlier, but he is no
longer able to "even push a vacuum," to cook, or to do dishes
because his symptoms have worsened significantly.  Tr. 139.

On March 13, 2006, Stevens, Deriso's mother, submitted a
written statement to the ALJ in which she reported Plaintiff's
symptoms have worsened significantly over the past three years to

14  -  OPINION AND ORDER

the point that he can no longer assist with household chores.
Tr. 138.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members."). "One reason for
which an ALJ may discount lay testimony is that it conflicts with
medical evidence." *Lewis*, 236 F.3d at 511.

The ALJ rejected the lay-witness statements of Deriso and
Stevens on the ground that they describe claimant as more limited
than indicated by the medical evidence. In addition, Plaintiff's
reported symptoms, as noted, are inconsistent with the medical
evidence in the record as to their intensity, duration, and
limiting effects. Tr. 166, 168-69, 196, 198-99, 222-23, 239,
306-07, 383-84.

On this record, the Court concludes the ALJ did not err when
he rejected the lay-witness statements of Deriso and Stevens
because the ALJ provided legally sufficient reasons supported by
the record for doing so.

**III. Dr. Bert's Opinion as to Plaintiff's RFC.**

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Bert, one of Plaintiff's treating physicians, as to Plaintiff's RFC.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining

16   -   OPINION AND ORDER

physician's opinion can constitute substantial evidence if it is
supported by other evidence in the record.  *Id.* at 600.

On May 28, 2004, Dr. Bert completed an RFC assessment at the
request of Plaintiff's counsel.  Tr. 233.  Dr. Bert diagnosed
Plaintiff as suffering from lumbar disc degeneration that causes
constant pain in Plaintiff's leg and back and stated his
diagnosis was supported by a positive MRI.  Tr. 233.  Dr. Bert
opined Plaintiff's symptoms are consistent with his impairment,
and Plaintiff does not appear to be malingering.  Tr. 234.
Dr. Bert also opined Plaintiff's symptoms could be expected to
last longer than 12 months and that he required surgery.  Tr.
234.  Dr. Bert reported Plaintiff can sit, stand, or walk for two
hours in an eight-hour workday with breaks every 60 minutes; can
lift 20 pounds occasionally but not any weight frequently; and
can occasionally twist, stoop, crouch, and climb ladders or
stairs.  Tr. 235-36.  In addition, Dr. Bert found Plaintiff's
symptoms would preclude him from working about three days per
month.  Tr. 236.

The ALJ, however, found the opinion of Dr. Bert as to
Plaintiff's RFC is inconsistent with the record as a whole.
Tr. 25.  For example, Dr. Bert noted Plaintiff had full strength
in his lower extremities and a normal sensory examination.  On
June 30, 2003, Dr. Bert also noted Plaintiff was more comfortable
when he took medication.  Tr. 166, 168.  In addition, Dr. Bobeck,

an examining physician whom Plaintiff consulted for a second opinion as to the surgery recommended by Dr. Bert, did not find any radiculopathy or nerve root compression.  Tr. 239.  He opined Plaintiff would not benefit from fusion surgery and recommended traditional nonoperative therapies for low back pain, including weight loss, physical therapy, and exercise.  Tr. 239.

Radiology reports also show Plaintiff has, at most, mild degeneration to his thoratic and lumbar spine.  Dr. Westfall, a reviewing physician, opined the radiology reports did not indicate that Plaintiff had a condition that would cause pain when he was sitting or cause so much pain that he would have to rest from activities in less than one hour.  Tr. 160-61, 223, 295.  Dr. Westfall completed an RFC in which she concluded Plaintiff can lift 50 pounds occasionally and 25 pounds frequently; can stand, walk, or sit for a total of six hours in an eight-hour workday; can perform unlimited pushing and pulling; and can frequently climb stairs, balance, stoop, crouch, or crawl, and occasionally kneel.  Tr. 220-21.

In addition, Dr. Nolan, an examining physician, opined Plaintiff suffers from a "legitimate chronic back syndrome complicated by an ill-advised attempt to embellish the presentation."  Tr. 307.  He completed an RFC at the request of the ALJ and found Plaintiff can lift 20 pounds occasionally or frequently; can sit, stand, or walk for six hours in an

eight-hour workday; can occasionally climb ramps or stairs,
kneel, crouch, or stoop; and is precluded from crawling.
Tr. 303-04.

The Court concludes on this record that the ALJ did not err
when he gave little weight to the opinion of Dr. Bert as to
Plaintiff's RFC because the ALJ provided legally sufficient
reasons supported by the record for doing so.


**IV.  Adequacy of the ALJ's Hypothetical to the VE.**

Plaintiff contends the ALJ erred when he failed to include
all of Plaintiff's limitations in his hypothetical posed to the
VE at Step Four and, based on the VE's response, concluded
Plaintiff could perform his past relevant work as a delivery
driver.

"Hypothetical questions posed to the vocational expert must
set out all the limitations and restrictions of the particular
claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

In his hypothetical to the VE, the ALJ relied on Dr. Nolan's
assessment of Plaintiff's RFC.  As noted, Dr. Nolan found
Plaintiff can lift 20 pounds occasionally or frequently; can sit,
stand, or walk for six hours in an eight-hour workday; can
occasionally climb ramps or stairs, kneel, crouch, or stoop; and
is precluded from crawling.  Tr. 308-11.  In addition, Dr. Nolan
stated Plaintiff's ability to push or to pull would be

19   -   OPINION AND ORDER

"affected" by his impairments, but he neglected to state whether it would affect Plaintiff's upper or lower extremities.   Tr. 309. Dr. Nolan, however, testified at the supplemental hearing that he was referring to Plaintiff's lower extremities.   Tr. 383-85. Dr. Nolan did not testify as to whether Plaintiff's ability to push or to pull with his lower extremities would be "limited" or, if so, the extent of any such limitation.   Tr. 301, 309, 382.

At the supplemental hearing, the ALJ asked the VE to consider a hypothetical claimant with all of the above limitations (except for any lower-extremity limitations) who is 47 years old, has a high-school education, has Plaintiff's past work history, and is limited to performing gross motor tasks. Tr. 391, 393.  The ALJ then asked the VE whether such a hypothetical claimant could perform Plaintiff's past relevant work in light of those limitations.   Tr. 393.  The VE stated a person with those limitations and qualifications could perform Plaintiff's past relevant work as a delivery driver.   Tr. 394. Plaintiff's attorney, however, asked the VE whether moderate "limitations" in pushing and pulling with the lower extremities would affect the hypothetical claimant's ability to perform the work of a delivery driver.   The VE stated it "would be an issue" if a person "had lower extremity problems."  Tr. 398-99. Dr. Nolan's RFC assessment of Plaintiff on which the ALJ relied in his hypothetical to the VE, however, took into account any

"effect" that Plaintiff's impairment in his lower extremities
might have by limiting the length of time Plaintiff could stand,
sit, walk, climb, kneel, crouch, stoop, or crawl.  Dr. Nolan's
assessment of Plaintiff's RFC also is consistent with his
examination notes and other medical evidence in the record.  For
example, Dr. Nolan reported muscle tests of Plaintiff's lower
extremities were normal, did not note any abnormality in
Plaintiff's range of motion, and did not note any tenderness to
palpation.  Tr. 306.  Dr. Nolan also noted Plaintiff's tremors
were voluntary and a sign of exaggerated symptoms.  Tr. 306.  In
addition, Dr. Westfall also reported in her RFC assessment that
Plaintiff did not have any limitations in pushing or pulling with
his lower extremities.  Tr. 223.  Finally, Dr. Bert found
Plaintiff had full strength in his lower extremities.  Tr. 168.

    On this record, the Court concludes the ALJ did not err at
Step Four when he found Plaintiff could perform his past relevant
work as a delivery driver because the ALJ provided legally
sufficient reasons supported by the record for doing so.

    As noted, a claimant is not disabled if he retains the RFC
to perform work that he has done in the past.  *Yuckert*, 482 U.S.
at 141-42.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  The Court, therefore, concludes Plaintiff is
not disabled because he retains the RFC to perform his past
relevant work as a delivery driver, and, accordingly, he is not

21    -  OPINION AND ORDER

entitled to benefits.  Thus, the Court need not address Plaintiff's argument as to the VE's testimony at Step Five.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of December, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

22   -   OPINION AND ORDER